UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HEMWATIE S. S.,

                Plaintiff,

                                                                                           5:20-CV-0792
v.                                                                                         (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

OLINSKY LAW GROUP                      HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, NY 13202

SOCIAL SECURITY ADMINISTRATION      CHRISTOPHER L. POTTER, ESQ.
OFFICE OF GENERAL COUNSEL–REGION I   Special Assistant U.S. Attorney
  Counsel for Defendant
625 JFK Building
15 New Sudbury Street
Boston, MA 02203

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

       Currently before the Court, in this action filed by Hemwatie S. S. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "Commissioner") pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), are (1) Plaintiff's motion for judgment on the pleadings, and (2) Defendant's motion for judgment on the pleadings. (Dkt. Nos. 10, 11.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion for judgment on the pleadings is granted.

## I.     RELEVANT BACKGROUND

### A.     Relevant Facts

Plaintiff was born in 1971, making her 45 years old on the date of her application for Title II Disability Insurance Benefits, and 47 years old on the date of the ALJ's decision regarding her application. Plaintiff reports having at a high school education and two years of a college education; and a vocational expert found that she has past relevant work as a caterer, restaurant manager, payroll clerk, executive secretary, and administrative assistant. Plaintiff alleges disability due to Crohn's disease (as well as Grave's disease, Hashimoto's thyroiditis, gallstones, degenerative disc disease of the cervical spine, and fibromyalgia).

### B.     Relevant Procedural History

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on October 24, 2016, alleging disability beginning four days earlier (on October 20, 2016). Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing on January 23, 2019, before ALJ Kenneth Theurer. On January 31, 2019, ALJ Theurer issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 13-31.)[1] On May 12, 2020, the Appeals Council denied review, making the decision the Commissioner's final agency decision. Plaintiff appealed from that decision to this Court on July 15, 2020.

### C.     The ALJ's Decision

---

[1] The Administrative Transcript is found at Dkt. No. 9. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

Generally, in his decision, the ALJ made the following seven findings of fact and conclusions of law. (T. 15-31.) First, the ALJ found that Plaintiff was insured for benefits under Title II until December 31, 2022. (T. 15.) Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of October 20, 2016. (T. 15-16.) Third, the ALJ found that Plaintiff has the following severe impairments: Crohn's disease, Grave's disease, Hashimoto's thyroiditis, gallstones, degenerative disc disease of the cervical spine, and fibromyalgia. (T. 16-19.) Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings"). (T. 19-20.) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b), except [that Plaintiff] has the following additional limitations: [she] can [only] occasionally climb ramps or stairs; [she] can never climb ladders, ropes, or scaffolds; [she] can [only] occasionally balance, stoop, kneel, crouch, and crawl; and [she] can sit for [only] two hours at one time, can stand for [only] one hour at a time, and can walk for [only] 30 minutes at one time before needing to switch positions.

(T. 20-29.) Sixth, the ALJ found that Plaintiff is unable to perform her past relevant work as an administrative assistant, payroll clerk, executive secretary, and restaurant manager as generally performed in the national economy (which do not require the performance of work-related activities precluded by Plaintiff's RFC). (T. 29-31.) Seventh, the ALJ found that Plaintiff has not been under a disability, as defined in the Social Security Act, from October 20, 2016, through the date of the decision (which again was January 31, 2019). (T. 31.)

    D.    **The Parties' Briefing on Their Motions**

        1.    **Plaintiff's Motion for Judgment on the Pleadings**

Generally, in her memorandum of law, Plaintiff asserts three arguments. (Dkt. No. 10 [Plf.'s Mem. of Law].) First, Plaintiff argues that the ALJ's RFC determination is unsupported by substantial evidence, because he failed to assign sufficient weight to the opinion of treating physician Dr. Sekou Rawlins (a gastroenterologist). (*Id*. at 14-24.) Second, Plaintiff argues that the ALJ's RFC determination is unsupported by substantial evidence, because he failed to assign sufficient weight to the opinion of physician's assistant Jacqueline Barkley. (*Id*.) Third, Plaintiff argues that the ALJ's RFC determination is unsupported by substantial evidence, because he improperly assigned only "some weight" to the opinion of consultative examining physician Dr. Elke Lorensen (a general vascular surgeon). (*Id*. at 24-28.)

### 2. Defendant's Motion for Judgment on the Pleadings

Generally, in his memorandum of law, Defendant asserts three arguments. (Dkt. No. 10 [Def.'s Mem. of Law].) First, Defendant argues that, in rendering a finding regarding Plaintiff's RFC limitations (which Plaintiff has the burden of establishing), the ALJ properly declined to give controlling weight to the opinion of Dr. Rawlins, because that opinion was neither well supported by clinical and laboratory diagnostic techniques nor consistent with other substantial evidence in the record. (*Id*. at 9-17.) Second, Defendant argues that, in rendering a finding regarding Plaintiff's RFC limitations, the ALJ properly declined to give controlling weight to the opinion of Ms. Barkley, because that opinion was neither well supported by clinical and laboratory diagnostic techniques nor consistent with other substantial evidence. (*Id*. at 17-19.) Third, Defendant argues that, in rendering a finding regarding Plaintiff's RFC limitations, the ALJ properly assigned only "some weight" to the opinion of Dr. Lorensen because (a) the ALJ adopted Dr. Lorensen's conclusions as to Plaintiff's limitations as to lifting, carrying, sitting,

standing and walking consistent with Dr. Lorensen's opinion, and (b) the ALJ provided good reasons for discounting Dr. Lorensen's conclusions as to Plaintiff's reaching limitations. (*Id*. at 3-8.)

## II.     APPLICABLE LEGAL STANDARDS

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

    **B.**    **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if

> the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

### III. ANALYSIS

#### A. Whether the ALJ Assigned Sufficient Weight to the Opinion of Treating Physician Dr. Sekou Rawlins

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11 [Def.'s Mem. of Law].) To those reasons, the Court adds only the following analysis (which is intended to supplement and not supplant Defendant's reasons).

The ALJ expressly relied on at least *some* of Dr. Rawlins' opinions: (1) Dr. Rawlins' findings and opinions based on the results of Plaintiff's colonoscopies, endoscopy and MRI (*see, e.g.,* T. at 24, 376, 380, 556, 762); (2) Dr. Rawlins' finding that Plaintiff has a "fair [to] good" prognosis (*see, e.g.,* T. at 25, 752); and (3) Dr. Rawlins' acknowledgment Plaintiff's diagnosed exertional and non-exertional limitations are based (at least in part) on her subjective self-reports of nausea, pain and tenderness, and not any clinical findings or objective signs (*see, e.g.,* T. at 25, 752, 753).[2] The question is whether the ALJ gave good reasons for not giving more weight to

---

[2] The Court is not persuaded by Plaintiff's argument that the ALJ has "misconstrue[d]" the above-cited record pages. (Dkt. No. 10, at 20.) The Court notes that, in response to an instruction to "[i]dentify your patient's symptoms," Dr. Rawlins checked the box beside the word "nausea," a symptom that (at least to the extent it is based on a self-report) is

Dr. Rawlins' opinion regarding Plaintiff's diagnosed exertional and non-exertional limitations.

The ALJ balanced this particular opinion against three facts: (1) the fact that Dr. Rawlins' speciality was as a gastroenterologist (T. at 25);[3] (2) the fact that this particular opinion was not well supported by "chronically positive objective clinical findings, including results of [Dr. Rawlins'] own exams of [Plaintiff]" (*id.*);[4] and (3) the fact that this particular opinion was inconsistent with the other substantial evidence in the record (T. at 25-26).

With regard to this third fact, the ALJ identified the other substantial evidence as including (1) Plaintiff's "overall positive response to mental health treatment," (2) her "inconsistent statements about the severity of her symptoms," and (3) her "engagement in . . . activities consistent with a range of unskilled work." (T. at 25.) Granted, Plaintiff is correct that the ALJ's reliance on this first piece of evidence was erroneous: Plaintiff's mental health

---

subjective in nature. (T. at 752.) *See, e.g., Wedge v. Shawmut Design and Const. Group Long Term Disability Ins. Plan*, 23 F. Supp.3d 320, 326 (S.D.N.Y. 2014) ("Notably, Dr. Bernstein discerned an inconsistency between Plaintiff's subjective complaints [of, among other things, nausea] and the objective tests . . . ."); *Stanley v. Schweiker*, 529 F. Supp. 236, 237 (E.D.N.Y. 1981) ("Plaintiff continued to complain of subjective symptoms such as . . . nausea . . . ."). Also inherently subjective in nature is pain. *See, e.g., Nix v. Astrue*, 07-CV-0344, 2009 WL 3429616, at *4 (W.D.N.Y. Oct. 22, 2009) ("Especially where a claimant alleges disability due to an inherently subjective complaint such as pain, an ALJ must necessarily base his decision on the claimant's credibility."). Moreover, in response to the instruction to "[i]dentify the clinical findings and objective signs," Dr. Rawlins stated merely, "[Positive] [t]enderness in right abdomen + joins." (T. at 753.)

[3]     *See* 20 C.F.R. § 404.1527(c)(5) (providing that a source's speciality can be relevant to the weight given to his or her opinion).

[4]     The Court is not persuaded by Plaintiff's argument that this particular opinion was indeed well supported by clinical and laboratory diagnosis techniques, pursuant to 20 C.F.R. § 404.1527(c)(2). (Dkt. No. 10, at 15-18.) Either the record evidence cited by Plaintiff does not constitute medically acceptable clinical and laboratory diagnosis techniques or it merely supports a finding that this particular opinion was only *somewhat* supported by those techniques, not that it was *well* supported by them. (*Id.*; *see also* Dkt. No. 11, at 11-13.)

treatment was (as the ALJ elsewhere acknowledged) non-existent, not positive. (T. at 25; Dkt. No. 10, at 19.) However, reliance on the second and third pieces of evidence remains proper. The ALJ remarked that, according to Plaintiff's own statements, she engages in a range of activities such as showering and dressing daily, caring for her cats daily, watching movies daily, going to the gym or swimming up to seven days per week, cooking up to seven days per week, shopping up to twice per week, driving, doing basic cleaning, doing laundry, pruning shrubs and roses, typing a book on an iPad up to three hours per day, and operating her own catering business (including working a seasonal booth and the Syracuse Regional Market up to 15 hours per week). (*See, e.g.,* T. at 23-27; Dkt. No. 9, at 226-233, 363, 736.)[5]

Based on this careful and thorough balancing, the ALJ properly concluded that Dr. Rawlins' opinion regarding Plaintiff's diagnosed exertional and non-exertional limitations should be discounted. (T. at 25-26, 29.) Under the circumstances, the Court declines Plaintiff's invitation to re-weigh the evidence on its substantial-evidence review. *See Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) (Cholakis, J.) ("[I]it is not the function of the reviewing court to reweigh the evidence. . . . The court is confined to the limited role of assessing whether the ALJ's decision is supported by substantial evidence.") (citation omitted).

For all of these reasons, the Court finds that the ALJ assigned sufficient weight to the

---

[5] The Court notes that an inconsistency with the medical evidence as a whole has been routinely found to be a good reason for declining to give full weight to a treating physician's opinion. *See, e.g., Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011) (Mordue, J.) ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.") (citing *Stevens v. Barnhart*, 473 F. Supp. 2d 357, 362 [N.D.N.Y. 2007][Bianchini, M.J.]); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record") (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 [2d Cir. 2004]).

opinion of Dr. Rawlins.

      **B.**      **Whether the ALJ Assigned Sufficient Weight to the Opinion of Treating Physician's Assistant Jacqueline Barkley**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11 [Def.'s Mem. of Law].) To those reasons, the Court adds only the following analysis (which again is intended to supplement and not supplant Defendant's reasons).

The Court's analysis of this issue is similar to its analysis of the issue presented above in Part III.A. of this Decision and Order (regarding the opinion of Dr. Rawlins). The ALJ expressly relied on at least *some* of Ms. Barkley's opinions: (1) Ms. Barkley's findings and opinions based on the results of her personal examinations of Plaintiff (and her review of the results of Plaintiff's various other exams and tests), including Ms. Barkley's repetitive findings that Plaintiff appeared awake, alert, and/or in no acute distress (*see, e.g.,* T. at 683, 691, 701, 737-38 [reporting that Plaintiff was "alert and oriented," with "mood," "affect," "behavior" and "thought content" that were "normal"]); (2) Ms. Barkley's finding that Plaintiff has a "chronic" but "stable" prognosis (*see, e.g.,* T. at 25, 739); and (3) Ms. Barkley's apparent acknowledgment Plaintiff's diagnosed exertional and non-exertional limitations are based (at least in part) on Plaintiff's subjective self-reports of nausea and pain (*see, e.g.,* T. at 25, 739).

The question is whether the ALJ was required to give greater weight to Ms. Barkley's opinion regarding Plaintiff's diagnosed exertional and non-exertional limitations. The ALJ balanced this opinion against three facts: (1) the fact that "a physician assistant is not an

acceptable medical source under the Federal regulations" (T. at 29);[6] (2) the fact that this particular opinion is not well supported by "chronically positive objective clinical findings, including results of [Ms. Barkley's'] own exams of [Plaintiff]" (T. at 25); and (3) the fact that this particular opinion was inconsistent with other substantial evidence (T. at 25-26). Based on this balancing, the ALJ concluded that this opinion should be discounted. Again, the Court declines Plaintiff's invitation to re-weigh the evidence on its substantial-evidence review. *Vincent*, 830 F. Supp. at 133.

For all of these reasons, the Court finds that the ALJ assigned sufficient weight to the opinion of Ms. Barkley.

### C. Whether the ALJ Assigned the Proper Weight to the Opinion of Consultative Examining Physician Dr. Elke Lorensen

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis (which again is intended to supplement and not supplant Defendant's reasons).

The ALJ adopted Dr. Lorensen's opinion regarding Plaintiff's lifting, carrying, sitting, standing and walking limitations. (T. at 20, 26-27.) However, the ALJ expressly declined to adopt Dr. Lorensen's opinion regarding Plaintiff's reaching limitations: specifically, his opinion that she could "never" reach overhead, and that she could only "occasionally" reach in other

---

[6] The Court notes that, where (as here) a claimant files her disability claim before March 27, 2017, a physician's assistant is not deemed to be an "acceptable medical source." 20 C.F.R. § 404.1502(a)(8); *see, e.g., Colondres v. Barnhart*, 04-CV-1841, 2005 WL 106893, at *6 n. 97 (S.D.N.Y. Jan. 18, 2005) (noting that a physician's assistant "is not an acceptable medical source and such opinion is never entitled to [controlling] weight" as is afforded to a treating physician).

directions. (T. at 368.) Plaintiff argues that this later ruling was error.

The problem is that Dr. Lorensen gave no response when directed to "[i]dentify the particular medical or clinical findings" that supported his assessment or any limitations and why . . . ." (*Id.*)[7] Furthermore, Dr. Lorensen also opined that Plaintiff (1) could change clothes without assistance, (2) could get on and off the exam table without assistance, (3) could rise from a chair without difficulty, (4) could squat fully, (5) had "intact" hand and finger dexterity, (6) had a grip strength of 5 out of 5 bilaterally, (7) could frequently lift/carry up to 10 pounds, and (8) could occasionally lift/carry up to 20 pounds. (T. at 363, 364, 367.) Finally, Plaintiff herself acknowledged that her activities of daily living ranged from showering and dressing daily to swimming up to seven days per week to working part time as a caterer. (T. at 26-29.) *See also, supra,* Part III.A. of this Decision and Order.[8] Again, under the circumstances, the Court declines Plaintiff's invitation to re-weigh the evidence on its substantial-evidence review. *Vincent*, 830 F. Supp. at 133.

For all of these reasons, the Court finds that the ALJ assigned the proper weight to the opinion of Dr. Lorensen.

**ACCORDINGLY**, it is

---

[7] The Court notes that neither Dr. Rawlins nor Ms. Barkley found any reaching limitation, even though they were asked whether there were "any other limitations (such as limitations using her hands, arms, fingers, . . . etc.) that would affect [Plaintiff's] ability to work at a regular job on a sustained basis." (T. at 739-42, 752-55.)

[8] The Court notes that a significant range of activities of daily living can contradict alleged deficits in using the upper extremities. *See, e.g., Donna M.W. v. Comm'r of Soc. Sec.*, 18-CV-0364, 2019 WL 2603894, at *6 (N.D.N.Y. June 25, 2019) (Peebles, M.J.); *Pearson v. Astrue*, 10-CV-0521, 2012 WL 527675, at *11 (N.D.N.Y. Feb. 17, 2012) (D'Agostino, J.); *Scott v. Comm'r of Soc. Sec.*, 06-CV-0481, 2009 WL 1559819, at *10 (N.D.N.Y. June 2, 2009) (Scullin, J.).

ORDERED that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

ORDERED that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

ORDERED that the Commissioner's Decision is **AFFIRMED**; and it is further

ORDERED that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: March 17, 2022
Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge